## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GLOBAL RECYCLING SOLUTIONS, LLC,  :
a New Jersey limited liability company  :

        Plaintiff,  :

        v.  :     C.A. No. 09-976-LPS

GREENSTAR NEW JERSEY, LLC,  :
a Delaware limited liability company;  :
GREENSTAR LLC, a Delaware limited  :
liability company and NTR plc, a Republic  :
of Ireland public limited company  :

        Defendants.  :

---

Dominick T. Gattuso, Kurt M. Heyman, PROCTOR HEYMAN LLP, Wilmington, DE; Trent S. Dickey, David L. Cook, SILLS CUMMIS & GROSS, P.C., Newark, NJ,

        Attorneys for Plaintiff.

Stephen C. Norman, Ryan Christian Walker, POTTER ANDERSON & CORROON, Wilmington, DE; Charlie Baumann, Andrew Nelson, LOCKE LORD BISSELL & LIDDELL LLP, Houston, TX,

        Attorneys for Defendants.

---

## MEMORANDUM OPINION

September 28, 2011
Wilmington, Delaware

_(signature)_

**STARK, U.S. District Judge:**

Pending before the Court is the Rule 12(b)(6) Motion to Dismiss filed by defendants

Greenstar New Jersey, LLC ("Greenstar NJ") and Greenstar, LLC ("Greenstar") (collectively,

"Defendants") (D.I. 17) and the Rule 12(b)(2) & (6) Motions to Dismiss filed by defendant NTR

plc ("NTR") (D.I. 26). Plaintiff Global Recycling Solutions LLC ("Global) opposes the motions.

(D.I. 20; D.I. 30)

## I.    BACKGROUND[1]

### A.    The Parties

Global is a New Jersey limited liability company with offices in Freehold, New Jersey.

(D.I. 16 at ¶ 3) Greenstar NJ and Greenstar are Delaware limited liability companies with offices

in Houston, Texas. (*Id.* at ¶¶ 8-9) NTR is a public limited company registered in Republic of

Ireland. (*Id.* at ¶ 10)

### B.    Facts

Global owned and operated a recycling business in New Jersey, which Greenstar NJ

acquired through an asset purchase agreement ("APA") executed on July 2, 2008. (D.I. 18 at 1)

Included in the assets acquired by Greenstar NJ was the existing contract for recycling services at

the Monmouth County Reclamation Center (the "MCRC") that Global held with Monmouth

County, New Jersey ("the County"). (*Id.*) This agreement was scheduled to terminate in

December 2009. (*Id.*)

The APA was negotiated by Global, Greenstar, and Greenstar's parent company, NTR;

---

[1]On a motion to dismiss, the Court must accept all factual allegations contained in the
complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Oshiver v.
Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

1

Greenstar created Greenstar NJ as its subsidiary to execute the APA. (*Id.*) The purchase price

under the APA was $4,615,000. (D.I. 16 at ¶ 199) The APA contains two hold-back provisions,

§ 2.2(c) and § 2.6, which provided that Greenstar NJ would withhold payment of thirty percent of

the purchase price, $1,384,500, until a new five-year contract with the County was obtained. (*Id.*

at ¶ 5) Specifically, § 2.2(c) of the APA provides:

> Buyer shall also hold back at Closing $1,384,500 of the Purchase
> Price (the "New Monmouth County Agreement Payment"). The
> Buyer will release to Seller the New Monmouth County Agreement
> Payment within five business days after Buyer's receipt of a new
> contract with Monmouth County for the processing and marketing
> of recyclable materials at the Business for a five year term on terms
> acceptable to Buyer (the "New Monmouth County Agreement"),
> such New Monmouth County Agreement Payment to be made only
> in accordance with Paragraph 2.6 hereof.

(D.I. 18 Ex. A § 2.2(c))

> In turn, Section 2.6 states:

> New Monmouth County Agreement Payment. The New
> Monmouth County Agreement Payment shall be payable only upon
> Buyer's receipt of written evidence satisfactory to it that the New
> Monmouth County Agreement has been obtained for the benefit of
> Buyer. If the New Monmouth County Agreement is not obtained
> by November 30, 2009, the New Monmouth County Agreement
> Payment shall no longer be due and payable to Seller and the
> Purchase Price shall be reduced accordingly.

(D.I. 18 Ex. A § 2.6)

Greenstar NJ never entered into a new agreement with the County. (D.I. 18 at 1-2)

However, Global had negotiated with the County on behalf of Greenstar NJ and the County had

offered a five-year contract to Greenstar NJ. (D.I. 16 at ¶ 135) Greenstar NJ refused this offer,

as well as subsequent offers made by the County. (*Id.* at ¶¶ 145, 152) Greenstar NJ ultimately

made a proposal to the County, but no agreement was ever entered into. (*Id.* at ¶ 178; D.I. 18 at 9) When the County requested bids for its recycling service contract upon termination of its negotiations with Greenstar NJ, Greenstar NJ submitted a proposal, but, again, did not reach agreement with the County. (D.I. 16 at ¶ 188) Greenstar NJ never made the hold-back payment to Global. (*Id.* at ¶ 196)

### C.    **Procedural History**

Global filed this action on December 21, 2009, alleging that Greenstar NJ breached the APA and the implied covenant of good faith and fair dealing by failing to make the hold-back payment. (D.I. 1 at ¶¶ 42-45, 47-51) Global filed a First Amended Complaint on March 12, 2010 (D.I. 10) and a Second Amended Complaint on April 28, 2010 (D.I. 16). The amendments added Greenstar and NTR as defendants and also added claims of fraudulent inducement, negligent misrepresentation, tortious interference with contractual relations, and tortious interference with prospective economic or business advantage. (*See* D.I. 16) On April 28, 2010 Greenstar NJ and Greenstar filed their motion to dismiss. (D.I. 17) On June 23, 2010, NTR filed its motion to dismiss. (D.I. 26) Briefing on the motions was completed on July 30, 2010. (D.I. 32) The Court heard oral argument on these motions on May 10, 2011. (D.I. 52)

## II.    **LEGAL STANDARDS**

### A.    **Motion to Dismiss Pursuant to Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant. Determining the existence of personal jurisdiction requires a two-part analysis. First, the Court analyzes the long-arm statute of the state in which the Court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Next, the Court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share,* 735 F.2d at 67 n.9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence.").

If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Conner v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken

4

as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

## B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). At

5

bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III. DISCUSSION

### A. Breach of Contract Claim

Initially, Greenstar asserts that Global fails to state a claim for breach of contract against it because it was not a party to the allegedly breached contract. (D.I. 18 at 13; D.I. 52 at 4-5) Greenstar asserts that due to its lack of privity with Global, the breach of contract claim must fail as a matter of law. (D.I. 18 at 13) Global does not dispute Greenstar's assertion that it was not a party to the contract. Instead, Global asserts that Greenstar can be held liable under the contract because it participated in negotiation of the contract. (D.I. 18 at 4) Despite Greenstar's participation in contract negotiations, Greenstar was not a signatory to the contract. (D.I. 52 at 4) Because Greenstar was not a party to the contract, a claim for breach of the contract cannot be asserted against it. *See Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963

A.2d 746, 760 (Del. Ch. 2009), *aff'd* 976 A.2d 170 (Del. 2009) ("[T]he ordinary rule is that only the formal parties to a contract are bound by its terms."). Therefore, the Complaint fails to state a breach of contract claim against Greenstar.

Greenstar NJ contends that Global fails to state a claim for breach of contract against it as well. (D.I. 18 at 12) Specifically, Greenstar NJ argues it was not obligated to make the hold-back payment because it never entered into a new contract with the County. (*Id.*) According to Greenstar NJ, the contract unambiguously requires that the new County agreement be executed and that the terms of the agreement be acceptable to Greenstar in order for the hold-back payment to be due. (*Id.* at 14) Greenstar NJ contends that Global's argument – that the terms of the County agreement were established at the time the APA was executed – renders the APA's satisfaction clause meaningless and improperly requires the Court to read terms into the APA. (*Id.* at 16)

Global responds that the APA does not require the formation of a contract for the hold-back to become due, but requires only that a satisfactory contract be obtained (presumably meaning that an offer be made). (D.I. 20 at 3) Global points out that a letter of intent between the negotiating parties included the words "execution" and "execute" when referring to the formation of the APA, but these terms do not appear in the APA. (*Id.* at 4) Global argues that it obtained a contract which met the terms Greenstar indicated at the time it entered into the APA would be satisfactory, and Greenstar now attempts to insert additional conditions into the hold-back provisions to skirt its obligation to make the payment. (*Id.* at 13) Additionally, Global asserts that Greenstar acknowledged the hold-back provision is ambiguous; in Global's view, such ambiguities are a sufficient reason to deny dismissal of the breach claims. (*Id.* at 13-14)

7

In response, Greenstar NJ cites § 2.2(c) of the APA, which defines "New Monmouth County agreement" as "a new contract . . . ," arguing that this provision requires an executed contract to trigger the hold-back obligation. (D.I. 23 at 2) Also, Greenstar NJ asserts that the use of the term "execution requirement" in the letter of intent, and the absence of such term from the APA, does not show that the APA's hold-back payment obligation is triggered by a mere offer from the County. (*Id.* at 4) Finally, Greenstar NJ argues that the APA's unambiguous satisfaction clause makes clear that the terms of a new County agreement needed to be satisfactory to Greenstar at the time a new County agreement was offered, not at the time the APA was formed. (*Id.* at 4-6) Greenstar NJ alleges that Plaintiff concedes all the material terms of a new County agreement were not established at the time of the APA. (*Id.* at 6)

Many of the operative facts are undisputed. Most notably, the parties agree that Greenstar NJ was offered a new agreement by the County, but never entered into the new agreement. The dispute, therefore, centers on the meaning of the hold-back provisions. The question to be answered is whether, under the hold-back provisions, what event triggers Greenstar NJ's obligation to make the hold-back payment?

Global has pled sufficient facts to state a claim for breach of contract under its interpretation of the provisions. Global argues that an offer for a new County agreement triggered the hold-back obligation, and Greenstar NJ breached the contract by failing to make the payment. (D.I. 20 at 1) The Court need not determine on a motion to dismiss whether Global (or Greenstar NJ, for that matter) is correct in its interpretation of the provision. At this point, it is sufficient for the Court to conclude, as it does, that the hold-back provisions are ambiguous. Specifically, the phrases "receipt of a new contract," from § 2.2(c), and "upon Buyer's receipt of

8

written evidence satisfactory to it that the New Monmouth County Agreement has been obtained for the benefit of Buyer," from § 2.6, are ambiguous. (D.I. 16 at ¶¶ 113-14) Due to these ambiguities, the factual allegations in the Complaint state a plausible claim for breach of contract against Greenstar NJ.

**B.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count Two of the Complaint alleges a breach of the implied covenant of good faith and fair dealing. (*Id.* at 36) Specifically, Global alleges that Greenstar breached the implied covenant by: unreasonably rejecting multiple agreements acceptable to the County, which also met the terms Defendants had earlier indicated would be acceptable to them; by submitting an unreasonable proposal to the County in bad faith; by submitting an unreasonable bid to the County in bad faith; by threatening the County in negotiations; and by manipulating the finances of the MCRC and misrepresenting its financial condition to the County. (*Id.* at ¶ 215)

This claim must be dismissed as against Greenstar because a claim for breach of an implied covenant of a contract can only be brought against parties to the contract. *See Wallace ex. rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 725 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of the contract."). Here, Greenstar was not a party to the contract.

Greenstar NJ moves for dismissal of this claim under Rule 12(b)(6). (D.I. 17) Greenstar NJ contends that the express terms of the hold-back provisions address when the obligation to make the hold-back payment arises, leaving no room for the implied covenant. (D.I. 18 at 2) That is, no terms are missing which the implied covenant would supply. (*Id.* at 20) Since the hold-back provisions place no limit on Greenstar NJ's right to decide if the new contract was

9

agreeable, Greenstar NJ argues it acted with good faith when it exercised its right to reject an unacceptable agreement. (*Id.* at 21) Greenstar NJ argues that Global attempts to insert a reasonableness requirement where the APA expressly omits one. (*Id.* at 21-22) Moreover, Greenstar NJ argues that it had an absolute right not to enter into a new contract. (D.I. 52 at 10) Thus, in Greenstar NJ's view, it could reject the contract for any reason, including a commercially unreasonable reason. (*Id.*) Finally, Greenstar NJ argues that the implied covenant can only apply if Greenstar NJ's failure to enter into a new agreement was unforeseeable to both parties, which it was not, as the APA clearly contemplates such a failure. (D.I. 18 at 22-23)

Greenstar NJ alternatively argues that, even assuming the duty of good faith and fair dealing applies, Global offers no evidence to support a finding of bad faith. (*Id.* at 23) Specifically, Greenstar NJ argues that Global supports its first basis for alleged bad faith – that Greenstar was shifting profits from the MCRC to its Allentown facility – only with conclusory allegations. (*Id.* at 25-26) Greenstar NJ argues that Global fails to allege that Greenstar believed this shifting of profits would impact the opinion of its parent company, NTR, or that Greenstar and Greenstar NJ's interests ever diverged. (*Id.*) Greenstar NJ also takes issue with Global's second and third bases for showing bad faith: that Greenstar attempted to gain a negotiating advantage with the County and to avoid making the hold-back payment. (*Id.* at 26-27) These motivations are refuted, Greenstar NJ contends, by the efforts it made and expenses it incurred in negotiations. (*Id.* at 26) Finally, Greenstar NJ contends there was no bad faith in its refusal to make the hold-back payment since it was merely exercising its contractual right. (*Id.* at 27)

Global responds that a duty of good faith and fair dealing exists even when contractually secured rights are exercised. (D.I. 20 at 14) Accordingly, Global argues that Greenstar and NTR

acted unreasonably and arbitrarily when they rejected the new County agreement and refused to make the hold-back payment. (D.I. 20 at 17) Global relies on its factual allegations in the Complaint, including the claims that Greenstar NJ unreasonably rejected various offers from the County, submitted unreasonable proposals and bids to the County, threatened the County in negotiations, prohibited the participation of Global personnel in the negotiations, and misrepresented the MCRC's financial condition to the County. (*Id.*) Global asserts that Greenstar NJ's argument for dismissal, at best, creates a factual dispute regarding the reasonableness of Greenstar's conduct, and this factual dispute precludes dismissal. (*Id.* at 18)

The Court agrees with Global. The duty of good faith and fair dealing applies, even if the APA clearly grants Greenstar the right to reject a proposed agreement. *See Agree Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 738 (D. Del. 2002) ("Delaware law recognizes an implied duty of good faith and fair dealing for all contracts."); *see also Wood v. New Jersey Mfrs. Ins. Co.*, 21 A.3d 1131, 1140 (N.J. 2011) ("[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing, that is, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."). A contractual right to reject another proposed agreement must be exercised in good faith. *See Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del. Ch. 1984) ("If one party is given discretion in determining whether [a] condition in fact has occured[,] that party must use good faith in making that determination."); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 170 (3d Cir. 2001) ("New Jersey law also holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract if the party 'acts in bad faith or engages in some other form of inequitable conduct'").

11

The factual allegations contained in the Complaint, which are assumed to be true, raise a plausible claim that Greenstar NJ acted in bad faith during negotiations with the County. Greenstar NJ's argument for dismissal rests on alternative explanations for its behavior, but these contentions fail to make Global's assertion of bad faith any less plausible. Greenstar NJ's arguments create a factual dispute regarding bad faith which cannot be resolved on a motion to dismiss. Therefore, the Court will deny Greenstar NJ's motion to dismiss the claim of breach of implied covenant of good faith and fair dealing.

### C.  **Fraudulent Inducement**

Count Three of the Complaint asserts a claim of fraudulent inducement against Greenstar and NTR.[2] (D.I. 16 at 38) Global alleges that executives of Greenstar and NTR knowingly made false statements regarding their long term plans for the MCRC and what they would consider acceptable terms for the new County agreement. (*Id.* at ¶¶ 218-19)

Greenstar and NTR separately move to dismiss this claim, arguing the alleged fraudulent representations are all statements of opinions as to future events, and adding that the Complaint fails to allege adequately an intent to deceive. (D.I. 18 at 27; D.I. 27 at 12) Greenstar and NTR further argue that the factual allegations in the Complaint indicate that Greenstar and NTR did intend to commit funds to the MCRC and to enter into a new contract with the County. (D.I. 18 at 28-29; D.I. 27 at 13-14)

Global responds that the alleged misrepresentations were not statements of opinions, but were assertions of present facts – i.e., statements that Greenstar and NTR had committed funds to

---

[2]This claim is not asserted against Greenstar NJ, which did not exist at the time of the alleged fraudulent inducement. (D.I. 52 at 26)

the MCRC and that certain contract terms were acceptable to them. (D.I. 20 at 18) According to Global, the alleged fraudulent misrepresentations also included promises to act in the future – that is, a promise to make the changes to the MCRC and a promise to accept a new contract on certain terms – that were made with the intention not to perform. (D.I. 20 at 20)

In response, Greenstar and NTR assert that, in order to qualify as a fraudulent misrepresentation, their stated commitment of funding for the MCRC must have been made with the intent not to perform. (D.I. 23 at 7; D.I. 27 at 14) Greenstar asserts that the Complaint contains factual allegations demonstrating that it, in fact, intended to perform. (D.I. 18 at 29; D.I. 52 at 13) Specifically, Greenstar points out that, prior to execution of the APA, it provided detailed drawings of the new single-stream facility and paid for necessary flooring conversion in anticipation of the new contract. (D.I. 18 at 29; D.I. 16 at ¶¶ 88, 89)

The Court concludes that Global has adequately pled a claim for fraudulent misrepresentation. The alleged misrepresentations were statements of existing facts: that is, Global alleges that Greenstar and NTR stated they had a then present intention to do certain things (make changes to the MCRC and enter into a contract with the County on certain specified terms). (*See* D.I. 23 at 8) ("Plaintiff's alleged misrepresentations are all statements of fact insofar as they expressed Greenstar's *present intentions* about future events . . . .") (emphasis added) Therefore, Global was not required to separately plead an intent to deceive.

Global has adequately pled facts from which it is plausible to conclude that at the time Greenstar and NTE made these representations they were false. For example, Greenstar's repeated rejection of a new contract with the County may be the result of a plan, hatched before the execution of the APA, to induce Global to enter into the APA and yet never enter into a new

contract with the County.  In short, the Complaint states a claim for fraudulent misrepresentation on the basis of a promise made with the intent not to perform.

### D.     <u>Negligent Misrepresentation.</u>

The Complaint asserts a claim for negligent misrepresentation based on the same representations raised in the fraudulent inducement claim.  (D.I. 16 at 39)  Specifically, Global asserts that Defendants' representations were made without reasonable care.  (*Id.* at ¶ 226)

Greenstar and NTR move to dismiss this claim, arguing that no false statement is alleged. (D.I. 18 at 30; D.I. 27 at 16)  That is, Greenstar and NTR assert they did harbor the intentions they expressed at the time of the APA.  (*Id.*)  Greenstar and NTR also assert that the APA's merger clause precludes the negligent misrepresentation claim.  Global responds that Greenstar's contentions create a factual dispute as to the truth of Greenstar's representations, a dispute the Court cannot resolve on the present motion.  (D.I. 30 at 24; D.I. 20 at 21)  Additionally, Global asserts that the merger clause did not preclude its claim because no anti-reliance clause was included.  (D.I. 20 at 22)

The Court finds that Global has properly pled a claim of negligent misrepresentation. Greenstar and NTR's dismissal argument creates a factual dispute regarding the truth of their representations.  Greenstar and NTR assert that they intended to perform; Global asserts otherwise.  Drawing all inferences in favor of Global, and thus assuming the statements were false, Global is plausibly entitled to relief.  The APA's merger clause does not preclude Global's claim because it does not speak in any way to Global's reliance on factual statements made by Greenstar and NTR.  *See Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004) ("Because Delaware's public policy is intolerant of fraud, the intent to preclude reliance on

14

extra-contractual statements must emerge clearly and unambiguously from the contract. . . .

Stated summarily, for a contract to bar a fraud in the inducement claim, the contract must contain

language that, when read together, can be said to add up to a clear anti-reliance clause by which

the plaintiff has contractually promised that it did not rely upon statements outside the contract's

four corners in deciding to sign the contract.").

### E.     Tortious Interference with Contractual Relations and Prospective Economic or Business Advantage

The Complaint asserts claims for tortious interference with contractual relations (Count

Five) and tortious interference with prospective economic or business advantage (Count Six).

(D.I. 16 at 40-42) Global alleges that Defendants interfered with the APA and with Global and

Greenstar NJ's agreement that Greenstar NJ would enter into a new contract with the County if

certain contract terms were obtained. (*Id.* at ¶ 235) Global further alleges that Greenstar's

conduct interfered with Global and its members' reasonable expectation of economic advantage

from the continued operation of the MCRC. (*Id.* at ¶ 238)

Greenstar and NTR move to dismiss these claims, arguing that since they did not breach

the APA it is impossible for Global to succeed on a tortious interference with contractual

relations claim. (D.I. 18 at 30; D.I. 27 at 16) Greenstar and NTR also assert that Greenstar is

shielded from liability on this claim by affiliate privilege. (D.I. 18 at 32) Global's allegations of

maliciousness or bad faith purpose, Greenstar and NTR argue, are conclusory and insufficient to

render plausible a claim of maliciousness or bad faith. (*Id.*) Regarding interference with

prospective business advantage, Greenstar and NTR assert that Global bases its allegations on the

conduct of Greenstar and NTR, which Greenstar and NTR argue was protected by the affiliate

privilege and was merely a rightful allocation of their resources. (D.I. 18 at 33-36; D.I. 27 at 17-20)

Global responds by reiterating that it believes it has properly pled a claim for breach of contract. (D.I. 20 at 22) Global also asserts that New Jersey law applies to the tortious interference claims (under Delaware's most significant relationship choice-of-law test), and New Jersey does not recognize an affiliate privilege. (*Id.*) Moreover, Global contends that it has overcome the affiliate privilege by alleging facts which support the inference that Greenstar took action motivated by the bad faith purpose of diverting profits from the MCRC to Greenstar's Allentown facility, in order to worsen the MCRC's financial condition, a condition Greenstar then used to justify unreasonable contract negotiations with the County. (*Id.* at 24-25) In Global's view, since this action was not taken by Greenstar in the pursuit of legitimate profit-seeking activities, Global has overcome any affiliate privilege. (*Id.* at 26)

Greenstar replies that the facts Global alleged cannot plausibly support a finding of bad faith because they indicate that Greenstar was negotiating a contract which would benefit Greenstar NJ. (D.I. 23 at 12) Further, Greenstar argues that Global has failed to plead a claim for bad faith under New Jersey law because Global failed to plead facts sufficient to establish that the interference was made intentionally and with malice. (*Id.* at 14) Greenstar asserts that under New Jersey law, the pursuit of profits is a legitimate motivation and acting out of concern for profits cannot constitute malicious interference. (*Id.* at 15)

Further, Greenstar contends that Delaware law applies to these claims because Delaware courts decide tort claims under a contract's choice-of-law provision (here, Delaware law is chosen) and the choice-of-law provision is broad enough to encompass the tort claims. (D.I. 23

16

at 9) Greenstar adds that it is improper for the Court to decide the contract dispute under Delaware law and then decide the tort claims under New Jersey law. (*Id.* at 10)

The Court finds it unnecessary at this point to resolve the choice-of-law issue. Under either Delaware law or New Jersey law, Global has pled sufficient facts to state a claim for tortious inference with contractual relations and with prospective business advantage. The Complaint alleges that Greenstar diverted recyclable streams from the MCRC to its Allentown facility, lowered the price of a supply stream sold by the MCRC to the Allentown facility, and proposed an agreement to the County by which Monmouth County streams would be processed in Allentown. These allegations plausibly lead to the inference that Greenstar was diverting profits from the MCRC in order to strengthen its negotiating position with the County, by allowing it to portray the MCRC as financially struggling, all of which was done with the intent to undermine the County negotiations. In turn, this would allow Greenstar to avoid making the hold-back payment. On the alleged facts, such a scenario is at least plausible.

Greenstar's insistence that it was motivated by concerns for profits is not sufficient to defeat Global's claim of tortious interference. Global pled facts demonstrating that Greenstar was acting in bad faith, namely that Greenstar's control of Greenstar NJ was not aimed at the shared profitability of Greenstar NJ or its affiliate, but rather was designed to benefit Greenstar at the expense of Global. These allegations of bad faith are sufficient to state a claim that the affiliate privilege under Delaware law is overcome. *See Shearin v. The E.F. Hunton Group Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994) (indicating affiliate privilege can be overcome where it is alleged that parent, in interfering with subsidiary's contract, "was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises" or "was motivated by some

malicious or other bad faith purpose"). Therefore, under either Delaware or New Jersey law, Global has stated a claim for tortious interference with contractual relations and tortious interference with prospective economic or business advantage

**F.**     **NTR's Motion to Dismiss for Lack of Personal Jurisdiction**

NTR argues that the Court lacks personal jurisdiction over it. (D.I. 32) NTR contends that Global fails to allege facts which support specific jurisdiction under the Delaware long-arm statute, and, to the contrary, admits that all the pertinent activity occurred in New Jersey. (*Id.* at 3) NTR also refutes general jurisdiction, contending that Global asserts no facts to support general jurisdiction and adding that NTR's interest in a Delaware subsidiary is an insufficient contact under Delaware law. (*Id.* at 4) Finally, NTR argues that exercising personal jurisdiction over it would violate Due Process because NTR has not purposefully availed itself of Delaware law sufficient to establish minimum contacts, and the ownership of a Delaware subsidiary is an insufficient contact. (*Id.* at 10-11)

Global opposes the motion, arguing that it asserts more than the parent-subsidiary relationship between NTR, Greenstar, and Greenstar NJ. (D.I. 30 at 17-18) Specifically, Global asserts that NTR directly participated in negotiations with Global and controlled its subsidiaries (Greenstar and Greenstar NJ) during the negotiations. (*Id.* at 17) Accordingly, Global asserts that the Court can exercise specific jurisdiction over NTR under the Delaware long-arm statute because NTR transacted business in Delaware. (*Id.* at 18) Global adds that Greenstar acted as NTR's agent during negotiations with Global (i.e., NTR used Greenstar to negotiate with Global), participated in the negotiations directly, created a Delaware subsidiary to execute the contract, and directed its subsidiary to select Delaware law to govern the APA. (*Id.* at 15)

18

Global argues that Due Process is satisfied because NTR's contacts with Delaware – its use of Delaware subsidiaries to negotiate with Global, the creation of a Delaware subsidiary to execute the fruits of those negotiations, its direct participation in those negotiations, and the execution of a purchase agreement which is governed by Delaware law – all make it reasonably foreseeable that NTR would be haled to a Delaware court for a dispute arising from the APA. (*Id.* at 19-20) Global further asserts that Delaware's interest in the dispute and judicial efficiency weigh in favor of finding personal jurisdiction. (*Id.* at 20-21)

NTR responds that the contacts asserted by Global are unavailing. (D.I. 32 at 3-4) NTR argues that its admitted participation in the contract negotiations were not connected to Delaware, and occurred in either New Jersey or Pennsylvania. (*Id.* at 4) Global's assertion that NTR created a Delaware subsidiary to execute the APA is unsupported by facts, NTR argues, since Greenstar created Greenstar NJ. (*Id.*) NTR also contends that the contracting parties' choice to include a Delaware law choice-of-law clause is insufficient to establish jurisdiction over NTR; further, the allegation that NTR directed the inclusion of such a provision is conclusory. (*Id.*) Accordingly, NTR argues that the only basis for asserting specific jurisdiction is its incorporation of Greenstar in Delaware, which was unrelated to the APA and, therefore, is an insufficient basis for finding jurisdiction in this case. (*Id.*)

NTR also contends that it has not purposefully availed itself of Delaware law, making it impossible to exercise personal jurisdiction over it without violating Due Process. (*Id.* at 10) Since its only contact with Delaware is its incorporation of Greenstar, no minimum contacts exist which are related to the dispute. (*Id.* at 11) NTR argues that the balancing of factors under the Due Process analysis favors dismissal because Global has another avenue for relief: New Jersey

admittedly has personal jurisdiction over NTR and Greenstar and an action there could fully provide relief to Global. (*Id.* at 14)

Finally, NTR argues that Greenstar and Greenstar NJ's acts are not attributable to NTR. (*Id.* at 14) NTR argues that any claim of alter ego fails because the Complaint does not allege the necessary control over the subsidiary – i.e., exclusive domination and control to the point of no legal or independent significance – or fraud or similar injustice. (*Id.* at 15) NTR also refutes an agency theory, contending that Global does not allege direction by NTR of any act occurring in Delaware or that Greenstar acted as NTR's agent. (*Id.* at 16-17) NTR admits that Global alleges that a Greenstar executive made a representation on behalf of NTR – to convert the MCRC to a single stream – but there is no allegation that NTR directed this executive or that the statement was made in Delaware. (*Id.* at 17)

The Court finds that Global has failed to make a sufficient showing that personal jurisdiction over NTR is proper. As an initial matter, no allegation that NTR created Greenstar NJ appears in the Complaint. NTR's admitted incorporation of Greenstar is insufficient under Delaware law to provide a basis for finding specific jurisdiction since that act of incorporation is unrelated to this dispute. Global has also failed to demonstrate that Greenstar and Greenstar NJ's actions are attributable to NTR through an alter-ego theory; Global alleges no complete control or fraud.

Further, NTR's alleged participation in the negotiations with Global and the representations NTR executives made during those negotiations are wholly unrelated to Delaware. The Complaint fails to allege that NTR directed Greenstar to act as its agent to transact business in Delaware or otherwise directed Greenstar to take action that would subject

20

NTR to personal jurisdiction in Delaware. Thus, the Complaint fails to adequately allege an agency relationship between Global and NTR. Global's sole claim that Greenstar acted on behalf of NTR in representing NTR's future commitment of funds to convert the MCRC is insufficient to support the exercise of personal jurisdiction. Accordingly, the Court will grant NTR's motion to dismiss for lack of personal jurisdiction.

## IV.   **Conclusion**

For the foregoing reasons, the Court will grant NTR's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Additionally, the Court will grant Greenstar's motion to dismiss Global's breach of contract claim and breach of implied covenant of good faith and fair dealing claim, but deny Greenstar's motion to dismiss Global's fraudulent inducement claim, negligent misrepresentation claim, and tortious interference with contractual relations and prospective economic or business advantage claims. Finally, the Court will deny Greenstar NJ's motion to dismiss with respect to all claims. An appropriate Order follows.